IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAROLYN POWELL, | : | C.A. 11-045-RGA |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION**

---

Angela Pinto Ross, Esq., Wilmington, Delaware; Attorney for Plaintiff Carolyn Powell.

Charles M. Oberly III, United States Attorney, Wilmington, Delaware; Dina White Griffin, Special Assistant United States Attorney, Philadelphia, Pennsylvania; Attorneys for Defendant Michael J. Astrue, Commissioner of Social Security.

---

September **14**, 2012
Wilmington, Delaware

*Richard G. Andrews*

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Plaintiff Carolyn Powell appeals the denial of her application for disability insurance

benefits under Title II of the Social Security Act and for supplemental security income under

Title XVI of the Social Security Act (collectively "DIB"). Jurisdiction exists pursuant to 42

U.S.C. §§ 405(g) & 1383(c)(3).

Pending before the Court are cross-motions for summary judgment filed by Powell and

the Commissioner. Powell's motion for summary judgment asks the Court to remand the case to

the Commissioner for further consideration in accordance with the law. The Commissioner's

cross-motion for summary judgment requests that the Court affirm the decision to deny benefits.

## BACKGROUND

### 1. Procedural History

On June 13, 2006, Powell filed applications for DIB. The claims were denied initially

and on reconsideration. On October 14, 2008, Powell testified at a hearing before an

administrative law judge ("ALJ"). On February 4, 2009, the ALJ issued a decision finding

Powell not disabled. The Appeals Council of the Social Security Administration, however,

overturned the ALJ's decision. In a remand order dated July 9, 2009, the Appeals Council noted

that Powell had submitted subsequent disability claims on February 27, 2009 and affirmed the

finding that Powell was disabled as of January 31, 2009. The Appeals Council also concluded

that it was not clear whether Powell was disabled for the period prior to January 31, 2009. The

Appeals Council vacated the ALJ's decision and instructed the ALJ to perform a more complete

review of the record with respect to that time frame.

2

On January 26, 2010, the ALJ held a remand hearing by video conference, where the ALJ heard further testimony. The ALJ denied Powell's claim for a second time on March 6, 2010. The Appeals Council denied Powell's request for review. The ALJ's March 6, 2010 decision became the final decision of the Commissioner. Powell filed a complaint (D.I. 2) seeking judicial review of the ALJ's decision and a motion for summary judgment seeking to vacate the decision and to remand for further proceedings. (D.I. 14). The Commissioner filed a cross-motion for summary judgment to affirm the ALJ's denial of benefits. (D.I. 17).

## 2. Relevant Medical History

In her disability application, Powell claimed she was disabled due to severe asthma, diabetes, hypertension, neck pain, and back pain. Tr. at 255. Powell also alleges that she suffers from knee pain, depression, and sleep apnea. Tr. at 15. Obesity is further alleged as a factor exacerbating her existing conditions. (D.I. 15, p. 26). Powell alleged a disability onset date of March 8, 2006.[1] Tr. at 182. Previously, she worked as a machine operator, data entry clerk, stock clerk, copy machine operator, shipping clerk, and sandblaster. Tr. at 79-83. In March 2006, Powell was involved in a motor vehicle accident which resulted in injuries to her neck, lumbar spine, knee, and shoulders. Tr. at 595. After this accident, Powell began treatment with her primary care physician, Morris Peterzell, D.O. Tr. at 395-563, 609-57, 702-23. This treatment went through October 2008, with Powell undergoing testing, including an October 2007 EMG that showed right S1 radiculopathy and chronic cervical radiculopathy. Tr. at 723, 598-602. Powell also underwent an MRI in November 2007 that revealed multilevel cervical disc herniation with evidence of moderate cord compression. Tr. at 596, 605. Dr. Peterzell

---

[1] Powell initially indicated an onset date of August 25, 2005. Tr. at 255. This was later amended to March 8, 2006. Tr. at 182.

prescribed Powell a cane due to her knee injuries in February 2007. Tr. at 563. He also opined that Powell was unable to use her hands and fingers for more than one-third of each day due to nerve problems stemming from her spinal injuries. Tr. at 744.

Powell also was seen by orthopedist Marc L. Kahn, M.D., from June 2006 through January 2007 and orthopedist Mohammad Kamali, M.D., from August 2006 through August 2007. Tr. at 366-77, 362-65. Dr. Kahn treated her back, neck, and shoulder impairments. Tr. at 366-77. Dr. Kamali focused on her left knee. Tr. at 362-65. Powell was treated for diabetes by endocrinologist Ronald Monsaert, M.D., from July 2007 through February 2008. Tr. at 658-70. Powell was treated by an additional orthopedic surgeon, Pawan Rastogi, M.D., for her spinal injuries in December 2007. Tr. at 680-81. Dr. Rastogi recommended a cervical discectomy and fusion surgery. Tr. at 681. Dr. Rastogi performed cervical surgery on Powell in May 2008. Tr. at 697-99. Powell was further treated for depression and anxiety by psychiatrist David Kalkstein, M.D., from June 2007 through November 2008. Tr. at 724-32, 741-43.

Three state agency physicians considered Powell's medical record and offered opinions regarding her impairments and limitations. The first, M. Golish, M.D., considered her physical ailments as of February 2007 and completed a Physical Residual Functional Capacity Assessment. Tr. at 398-94. Dr. Golish determined that Powell had multiple impairments that made life difficult, but that they did not appear to be as severe as Powell reported. Tr. at 393. He concluded that Powell was capable of performing activities that required her to walk indoors or outdoors, climb stairs, sit for five to six hours, stand for four to five hours, and lift weights up to ten pounds. Tr. at 393. Dr. Golish determined that Powell was capable of sedentary work. Tr. at 394.

4

A second state agency physician, Ramnik Singh, M.D., reviewed Powell's mental impairments and completed a Psychiatric Report and a Supplement Questionnaire as to Residual Functional Capacity in June 2007. Tr. at 564-68. Dr. Singh noted that Powell was moderately impaired in her ability to relate to other people, to engage in daily activities, and to take care of herself. Tr. at 567-68. Dr. Singh further opined that Powell was mildly limited in her ability to comprehend and follow instructions and was moderately limited in her ability to perform work requiring frequent contact with others. Tr. at 567. She was further moderately limited even where contact with others would be minimal and in her ability to perform simple tasks. Tr. at 567. Finally, Dr. Singh opined that Powell had moderately severe impairments in her ability to perform complex tasks, perform repetitive tasks, and perform varied tasks. Tr. at 567-68. Dr. Singh assigned Powell a "Global Assessment of Functioning" score of sixty. Tr. at 566.

The third state agency physician, C. King, M.D., also considered Powell's psychiatric symptoms in June 2007. Tr. at 583. Dr. King determined Powell was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, and to interact appropriately with the general public. Tr. at 582-83. Otherwise, the physician determined Powell had no significant mental limitations. Tr. at 581-83. The physician further concluded there was no evidence of significant cognitive impairment; Powell could perform activities of daily living and was suited for jobs that did not require significant interaction with the general public. Tr. at 583. Dr. King further noted that Powell's Global Assessment of Functioning score was sixty, reflecting stable condition. Tr. at 583. Dr. King concluded that Powell retained the mental residual functional capacity for simple, routine work. Tr. at 583.

5

The remand administrative hearing was held January 26, 2010. Powell described her employment history, including positions of data entry clerk, stocker, copy machine attendant, shipping clerk, and chemical packer and sandblaster. Tr. at 34-35. She testified to her diabetes and associated symptoms of pain, numbness, and tingling in her hands and feet. Tr. at 36. She had difficulty zipping and unbuttoning her clothing and holding small items such as forks, knives, toothbrushes, combs and pens. Tr. at 37. She was not able to use a computer for more than fifteen minutes a day. Tr. at 41. She also testified that she received a cane in March 2007 and that it helped her with balance and walking. Tr. at 40.

A vocational expert also testified at the administrative hearing. The ALJ presented the expert with hypotheticals corresponding to the ALJ's opinion regarding Powell's proven limitations, including the limitation that she would need to use a cane. Tr. at 42-47. The expert considered those limitations and opined that such a person would be capable of working a number of jobs that existed in the economy. Tr. at 45-47.

On March 6, 2010, the ALJ held that Powell was not disabled in the time period prior to January 31, 2009. Tr. at 21.

## STANDARD OF REVIEW

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such

6

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., evidence offered by treating physicians)-or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the Court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

7

## DISCUSSION

### 1. Disability Determination Process

Title 11 of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). In order to qualify for DIB, the claimant must establish that he or she was disabled prior to the date she was last insured. *See* 20 C.F.R. § 404.131. A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel,* 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, a finding of non-disabled is required. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is

8

severe. If the claimant is not suffering from a severe impairment or a combination of impairments that is severe, a finding of non-disabled is required. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii): *Plummer,* 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e). At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer,* 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by her impairment(s)." *Fargnoli v. Massanari,* 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work." *Plummer,* 186 F.3d at 428.

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer,* 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Id.* In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant

can perform, consistent with [his] medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

The ALJ applied the sequential analysis in rejecting Powell's claim. Tr. at 12-21. The ALJ found that Powell met the insured status requirement of the Social Security Act and had not engaged in substantial gainful activity since the alleged disability onset date of March 8, 2006. Tr. at 15. This satisfied the first step of the sequential analysis. At the second step, the ALJ determined that Powell suffered from multiple severe impairments, including degenerative disc disease involving the cervical and lumbar spine, mild asthma, left knee pain, diabetes, and major depressive disorder. Tr. at 15. The ALJ also determined that Powell's sleep apnea was not a severe impairment. Tr. at 15. Because the ALJ found severe impairments, she continued to the third step of the sequential analysis to determine whether any impairment or combination of impairments medically equaled one of the listed impairments that statutorily presume disability. Tr. at 15-16. The ALJ held that none of Powell's impairments equaled a listed impairment. Tr. at 16.

The ALJ then continued to the fourth step, where she determined Powell's residual functional capacity. Tr. at 16. The ALJ stated that she considered all of Powell's symptoms to the extent they reasonably could be accepted based on the objective medical evidence. Tr. at 16. The ALJ determined that Powell retained the residual functional capacity to perform certain limited types of light work. Tr. at 16. At the fourth step, the ALJ determined that Powell was capable of performing her past work as a copy machine operator. Tr. at 19. The ALJ then made the alternative finding that at the fifth step Powell was capable of making a successful

10

adjustment to new work that existed in significant numbers in the local and national economy. Tr. at 20-21. For these reasons, the ALJ held that Powell was not disabled within the meaning of the Social Security Act. Tr. at 21.

## 2. Appeal and Analysis of the ALJ's Decision

Powell makes three arguments in support of her appeal: (1) the ALJ erred by failing to acknowledge and evaluate all of the relevant medical evidence (D.I. 15, p. 21); (2) the ALJ erred by failing to consider Powell's obesity at every step of the sequential process (*Id.* at 26); and (3) the residual functional capacity determination failed to include all of Powell's relevant limitations and was thus not supported by substantial evidence. (*Id.* at 31).

The Court first addresses Powell's argument that the ALJ failed to incorporate significant evidence into the opinion. Powell objects to the ALJ's treatment of her use of a walking cane. Dr. Peterzell prescribed Powell a walking cane in February 2007 for a popliteal cyst and knee pain stemming from a car accident. Tr. at 17, 563. The ALJ declined to significantly limit Powell's residual functional capacity corresponding to this prescription, holding that Powell did not establish that the use of the cane was medically necessary. Tr. at 17. In doing so, the ALJ relied on physical examinations and medical notes showing that Powell had a normal gait and normal muscle strength. Tr. at 17. The ALJ also relied on Powell's testimony at the remand hearing in 2010, where she did not offer any complaints concerning her knee. Tr. at 17. The ALJ further noted physical examinations indicating 5/5 motor strength in Powell's legs, negative straight leg raise tests, and no signs of focal neurological defects.[2] Tr. at 17. The ALJ credited a

---

[2] The ALJ's manner of citing to the record is worthy of comment. In supporting her conclusion that Powell's knee had healed, the ALJ listed these medical findings and then generally cited Exhibits 3F-6F, 9F, 16F, and 19F. Tr. at 17. These seven Exhibits consist of 259 pages of medical records. The ALJ did nothing further to identify the evidence supportive of her conclusions. She did not indicate which Exhibits corresponded to which findings, let

11

state consultative physician who opined that Powell could walk without an assistive device, exhibited only a mild limp, had normal reflexes, normal sensation, normal strength in her legs and no muscle atrophy or wasting. Tr. at 17. The ALJ also noted that there was no record of treatment following Powell's scheduled surgery in November 2008. Tr. at 17. She then concluded that Powell's use of a cane was not medically necessary. Tr. at 17.

It is true that the ALJ's cited evidence tends to support the finding that Powell's use of a cane was not medically necessary. The ALJ, however, has the duty to discuss significant evidence both supportive of and contrary to Powell's claim for disability. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is a conflict in evidence, the ALJ may choose which evidence to credit, but cannot reject evidence for no reason or the wrong reason. *Id.* Nor should the ALJ ignore evidence that conflicts with her findings. *See id.* Here, the ALJ failed to resolve significant evidentiary conflicts. That is not to say that the record inevitably shows that Powell's use of a cane was medically necessary. There are, however, multiple examples of evidence supportive of Powell's claim that the ALJ either failed to fully address or completely ignored. For example, the ALJ explicitly relied on Powell passing straight leg raise tests in finding the knee was healed. The ALJ failed, however, to mention that Powell frequently failed these same straight leg tests on multiple occasions during the relevant time period.[3] There is no explanation for the disparate treatment of these test results. The Court takes no issue with the conclusion that

---

alone provide any identification of which pages supported which conclusions. One would expect that references to the results (positive or negative) of straight leg raise tests could be specifically identified. Not only would such citation assist this Court in reviewing the decision, it would likely lead to a more considered opinion by the ALJ in the first place.

[3] Powell had positive straight leg raise tests during doctors' appointments in April 2006 and January 2007. Tr. at 454, 646. Powell has stated that Powell had additional positive straight leg raise tests during appointments in August 2007, Tr. at 621, 623, October 2007, Tr. at 624, 629, January 2008, Tr. at 637, and February 2008. Tr. at 639. Defendant does not question these citations, and thus the Court accepts the interpretation of the medical records. The court cannot independently read and understand what all of the abbreviations and marginal handwriting are supposed to mean.

negative results undermine Powell's position that the cane was necessary. If, however, a
successful straight leg test is worthy of discussion when determining whether a handicap exists,
it follows that a failed straight leg test also merits attention.[4] When both passed and failed
straight leg tests are in the record, it is not reasonable to rely on one outcome while ignoring the
other. The ALJ's inconsistent treatment of these testing procedures merits remand.

The ALJ's failure to consider all the evidence is further demonstrated by an October 2006
letter to Dr. Peterzell from Powell's orthopedic surgeon, Dr. Kahn. Dr. Kahn's letter detailed his
orthopedic evaluation of Powell. Tr. at 372-74. One passage stated that Powell's leg strength
was rated at 5/5. Tr. at 374. Although the ALJ did not explicitly cite to this letter, the ALJ relied
on the testing result in her opinion. Tr. at 17. The ALJ did not mention any of Dr. Kahn's
additional findings, which included the following:

> At the present time despite treatment the patient remains symptomatic. The
> patient continues to be significantly limited with regards to activities of daily
> living. The patient continues to have difficulty with physical exercise, exertional
> type activities, heavy lifting and forward bending. Sitting and standing for long
> periods of time also give the patient difficulty.

Tr. at 372. The limitations regarding Powell's ability to sit, stand, and engage in activities of
daily living are relevant to both whether a cane was medically necessary and to her residual
functional capacity in general. They were never addressed in any form by the ALJ. That being
said, it was not inappropriate for the ALJ to rely on Dr. Kahn's notation that Powell's leg
strength was rated at 5/5. However, the ALJ ignored significant evidence supportive of Powell's
claim and provided no explanation why. The record details information likewise ignored by the
ALJ, including Dr. Peterzell's notes from June 2007 that state that Powell had difficulty walking

---

[4] Indeed, to the extent a failed test is supportive of a lesser RFC, it might be the case that failed tests are more
significant than an equal number of passed tests, as it is doubtful that a vocational expert would find that there are
jobs for someone who can only work 50% of the time.

13

and was sometimes unable to perform her activities of daily life. Tr. at 614. Similarly, Dr. Peterzell noted bilateral lower extremity pain with numbness and tingling and that Powell continued to use her cane in July 2007. Tr. at 618-19. These pieces of evidence are not isolated outliers overwhelmed by evidence of non-disability. The ALJ's repeated failure to address evidence supportive of Powell's claim justifies remand.

Powell also argues that the ALJ improperly denied credit to Dr. Peterzell's opinion that Powell could only use her hands and fingers for up to one-third of the day. Powell alleged this impairment was due to cervical disc disease and spinal injuries suffered in a car accident. These spinal injuries were evidenced by an October 2007 EMG that showed right S1 radiculopathy and chronic cervical radiculopathy.[5] Tr. at 598-602. An MRI also revealed multiple cervical disc herniation and cord compression. Tr. at 597. Dr. Peterzell opined that Powell's cervical issues limited the use of her fingers and hands for up to one-third of the day. Tr. at 744.

The ALJ declined to give Dr. Peterzell's opinion controlling weight. Tr. at 19. An ALJ may reject a treating physician's opinion only on the basis of contradictory medical evidence. *Griffies v. Astrue*, 2012 WL 1242302, at *11 (D. Del. 2012). The ALJ rejected Dr. Peterzell's opinion on the basis of that doctor's supposedly inconsistent treatment notes. Tr. at 19. The ALJ did not directly cite these treatment notes in her remand opinion. Tr. at 19. She instead referred to her initial opinion, stating that the inconsistent treatment notes were previously summarized

---

[5] The EMG's conclusions follow:

> 1) Mild, but definite findings are present suggesting a right lower cervical chronic radiculopathy, most likely at the C7 level.

> 2) Mild nonspecific findings of denervation are present in medial gastrocnemius and mild excess irritability in the low lumbar paraspinals. These findings are mild and nonspecific, but may suggest the presence of a right S1 radiculopathy. Clinical correlation is advised.

Tr. at 598.

and could be found there.[6] It is true that such inconsistent treatment notes would offer the ALJ reasonable grounds to deny Dr. Peterzell's opinion weight. The summaries of these inconsistent notes, however, are hard to find. Tr. at 129-38. The ALJ did generally discuss Powell's neck injuries and resulting limitations. Tr. at 134-35. The ALJ noted that Powell underwent a cervical discectomy and fusion in May 2008 to treat her complaints of neck pain. Tr. at 134-35. The ALJ further acknowledged Powell's hand numbness and tingling and the resulting effects on her fine motor skills. Tr. at 135. The ALJ then discussed evidence from Dr. Rastogi suggesting that Powell's symptoms had improved.[7] Nothing in this discussion, however, dealt with Dr. Peterzell's records or explained how they were inconsistent with his opinion that Powell's use of her hands was significantly limited. Tr. at 135. In this first opinion, the ALJ only mentioned Dr. Peterzell twice by name, and the references have no information regarding Powell's use of her hands. Tr. at 132. In a separate section of the opinion, the ALJ does include one paragraph which includes Dr. Peterzell's medical records (Exhibits 9F, 16F, and 19F). The ALJ noted that these records showed negative straight leg raise tests, 5/5 motor strength in both upper and lower extremities, and no signs of focal neurological deficits. Tr. at 134. There is, however, no explanation of how these records contradict Dr. Peterzell's opinion that Powell's use of her hands was limited. This lack of discussion falls short of the minimum explanation required for an ALJ to deny weight to a treating physician's opinion. The decision was thus not supported by substantial evidence.

---

[6] "[Dr. Peterzell's opinion] is not well supported by medical signs and laboratory findings and is inconsistent with his detailed, contemporaneous treatment records as summarized in the prior decision." Tr. at 19.

[7] "On August 19, 2008, surgeon P. Rastogi, M.D., wrote that she was doing quite well, with her neck doing well, and that she reported feeling much better with improved headaches. She did report some stiffness in her neck. Dr. Rastogi recommended that she continue to increase her activities (Exhibit 18F), and there are no additional treatment records for her neck in her file." Tr. at 135.

The ALJ failed to both discuss relevant evidence and to support her decision with substantial evidence. The ALJ's analyses of Powell's use of a cane and Dr. Peterzell's opinion regarding Powell's use of her hands and fingers were flawed. Powell has further arguments for appeal, but the Court need not reach those arguments, as remand is justified on the previously mentioned grounds.

An appropriate order will be entered.